**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Antonio Sanchez MARTINEZ,**
**Defendant-Appellant.**

**No. 73-1506.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Oct. 15, 1973.

Decided Nov. 15, 1973.

Rehearing Denied Dec. 18, 1973.

---

**974**

Harris L Hartz, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., on the brief), for plaintiff-appellee.

Jack L. Love, Federal Public Defender, for defendant-appellant.

Before LEWIS, JONES * and Mc-WILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Melvin Sedillo, his wife, Bertha, and Antonio Sanchez Martinez, the present appellant, were jointly charged in a two count indictment with the unlawful possession and distribution of heroin. Specifically, in the first count the three were charged with the unlawful possession of heroin with an intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In the second count, the three were jointly charged with the unlawful distribution of heroin, again in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Prior to trial, Melvin Sedillo pleaded guilty to both counts in the indictment and thereafter he testified as a defense witness in the trial of the remaining defendants, namely, Bertha Sedillo and Antonio Sanchez Martinez. Upon trial to a jury, Bertha Sedillo was found not guilty of counts one and two, but was adjudged guilty of the lesser included offense of possession of heroin. She does not appeal. Martinez was found guilty on both counts of the indictment, and he is the sole appellant in the present proceeding.

The principal point urged on appeal relates to the order of the trial court denying the request of Martinez that the identity of the Government's informer be disclosed. Under the circumstances of this case, we conclude that such denial was error. To demonstrate that such is the case, the Government's evidence will first be briefly summarized.

The Government called three witnesses, with only one of the three offering testimony which directly tied Martinez into the transaction which formed the basis for the entire prosecution. Michael Salazar, an undercover narcotics agent for the New Mexico State Police, assigned to the Drug Abuse Law Enforcement program in Albuquerque, New Mexico, testified that he, accompanied by an informant, proceeded to the home of Melvin Sedillo, in Albuquerque, where the informant introduced him to Melvin Sedillo. According to Salazar, he and the informant were taken to the kitchen in the Sedillo home, where Salazar in turn was introduced by Melvin Sedillo to the latter's wife, Bertha, and to Martinez. It was in the kitchen of the Sedillo home, according to Salazar, that he purchased heroin from Melvin Sedillo, the sale taking place in the presence of the informant, Bertha Sedillo, and Martinez. It was Salazar's testimony as to what transpired in the kitchen which tended to implicate Martinez in the transaction and upon which the Government necessarily relies in its efforts to show that Martinez aided and abetted Melvin Sedillo in his sale of heroin to Salazar.

The other two Government witnesses were members of the Albuquerque, New Mexico, city police force, each of whom testified that in a separate automobile they followed Salazar and the informant to the Sedillo home, saw the two of them enter the Sedillo home, and leave therefrom about one-half hour later. Neither of these witnesses could testify as to what transpired in the Sedillo household, although one of these wit-

* Honorable Warren L. Jones, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

nesses did testify that he had seen Martinez leave the Sedillo home and return thereto a short time later. There was a stipulation that the substance sold Salazar by Melvin Sedillo was heroin, and the foregoing constituted the Government's case. Incidentally, none of the defendants was arrested at the scene of the alleged crime, and the arrests occurred sometime later.

By way of defense evidence, Melvin Sedillo testified that it was he and he alone who sold the heroin to Salazar, and that his wife and Martinez had nothing to do with the sale. Specifically, he testified that his wife was not in the kitchen when the sale was consummated, but was in the living room. As concerns Martinez, Melvin Sedillo testified that Martinez was at his home on the day of the sale, but that at the time of the sale Martinez had left the Sedillo home to purchase some beer. Martinez testified in his own behalf and, though conceding that he was quite possibly in the Sedillo household on the day in question, denied involvement in anywise in the sale of heroin to Agent Salazar.

Before trial, and again during trial, counsel for Martinez requested the trial court to direct Government counsel to disclose the identity of its informant. This request the trial court denied on both occasions, with the comment that after "balancing the protection of the public and the needs of the defendant," the former outweighed the latter. As indicated, we believe this was error and that the trial court's ruling under the circumstances of this case constituted an abuse of his discretion.

Before examining the authorities, we would first emphasize the significant facts that in our view control the resolution of this controversy. First, the informer was present at the very time and place where the crime, according to Salazar, occurred. The informer was thus an eyewitness and an earwitness to what transpired. This takes on additional importance in view of the fact that the agent Salazar's testimony was in direct conflict with that of Martinez and Melvin Sedillo, and the jury's verdict necessarily hinged on whether the jurors believed Agent Salazar or Sedillo and Martinez.

Secondly, the informer was in a sense a "participant" in the transaction in that it was he who introduced the agent Salazar to Melvin Sedillo, and then, after introducing the two, stood by and watched the criminal transaction unfold before his very eyes and ears. Let us now examine the authorities which bear upon the necessity for the Government's disclosure of the identity of an informer under such circumstances.

Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), is virtually on all fours with the instant case and in our view is dispositive of the present controversy. In that case, the Supreme Court held that there is no fixed rule with respect to the disclosure by the Government of the identity of its informer and that the "problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense, [and that] [w]hether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case." In *Roviaro*, as here, the informer helped set up the commission of the crime and was present at its occurrence. Also, in *Roviaro*, as here, there was nothing in the record to indicate that the defendant himself knew the informer, or that the informer as of trial time was deceased or otherwise unavailable. Under such circumstances, the Supreme Court held that it was prejudicial error on the part of the trial court in permitting the Government "to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure."

Our own Tenth Circuit decisions subsequent to *Roviaro* indicate that under certain circumstances the Government must disclose the identity of its informer. For example, in Garcia v. United

States, 373 F.2d 806 (10th Cir. 1967), appears the following:

> "It seems to be settled that the government may be required to disclose the identity of an informer if his testimony might be relevant to the defense and it is made to appear on balance that justice would be best served by the disclosure. When the question of disclosure arose in the trial of this case, the court excused the jury and conducted sufficient inquiry to make sure that the undisclosed person had not introduced the officer to Garcia, was not present when these offenses were committed and had nothing whatsoever to do with them. On the authority of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, Judge Bratton ruled that even if the undisclosed person be an informer, there was no reasonable likelihood that his testimony would be relevant or helpful to the defense. \* \* \* "

The clear import of *Garcia* is that when, as here, the informer introduced the undercover agent to the accused's codefendant and was present when the sale was consummated, then the testimony of the informer is relevant and the "balancing" test in such circumstances dictates a disclosure of the identity of the Government's informer. *See, also,* such cases as United States v. Herrera, 455 F.2d 157 (5th Cir. 1972), and United States v. Abarca-Espinoza, 440 F.2d 1354 (9th Cir. 1971).

■ In denying the request for disclosure of the identity of the Government's informer, the trial court relied on United States v. Kelley, 449 F.2d 329 (9th Cir. 1971). It is quite true that in *Kelley* it was held not to be error to deny the defendant's request for disclosure. However, it was there noted that the testimony of the undisclosed informer would in all probability have been irrelevant, since the "informant neither witnessed the crime nor transacted business with the defendant." In the instant case, however, unlike *Kel-ley*, the informer did witness the crime and participated, to some degree, in the transaction on which the prosecution is based and accordingly his testimony would in all probability have been highly relevant.

■ Though our resolution of the foregoing matter necessitates remand for further proceedings, we shall nonetheless comment here on the other matters urged by Martinez in this court as error. Prior to trial, Martinez sought a civil commitment as a drug addict with the criminal charge to be then held in abeyance as provided for in 28 U.S.C. § 2901 et seq. The trial court denied this request and this ruling is assigned as error. In thus ruling, the trial court initially indicated some doubt as to whether Martinez was "eligible" to seek such commitment under the provisions of that statute, he being charged with the "distribution" of heroin and the statute declaring that one charged with "selling" heroin is "ineligible." However, the trial court quite clearly indicated that even assuming Martinez to be eligible, the trial court, in exercising the discretion reposed in it by the statute, chose to reject Martinez' request for civil commitment, as opposed to criminal prosecution. Such determination is by the statute itself not reviewable by us. 28 U.S.C. § 2906. *See,* United States v. Aldrete, 414 F.2d 238 (5th Cir. 1969). The trial court in the instant case did exercise its discretion, and hence Watson v. United States, 141 U.S.App.D.C. 335, 439 F.2d 442 (1970), and United States v. Williams, 407 F.2d 940 (4th Cir. 1969), are inapposite. There is no error in this regard.

■ At trial, Martinez testified that though he was a drug addict, he did not distribute or sell drugs nor had he aided or abetted in any distribution or sale of heroin to Agent Salazar. To corroborate his testimony concerning his addiction to drugs, Martinez sought to offer evidence concerning his military record and his service connected disability leading

up to his drug addiction. The trial court on objection refused to allow such evidence to be presented to the jury. That Martinez was an addict was in nowise disputed. In so ruling, the trial court in our view did not commit reversible error. The materiality and relevance of proffered evidence resides in the sound discretion of the trial court, and an appellant court is bound to uphold the decision of the trial court absent a clear abuse of discretion. United States v. Twilligear, 460 F.2d 79 (10th Cir. 1972).

Finally, complaint is made about the prosecuting attorney's closing argument wherein, according to counsel, the Government's attorney, in effect, purported to "put his personal stamp of approval on the investigation and in effect vouched for the veracity of the agent." Such is improper, according to counsel, citing Wharton's Criminal Law and Procedure, Vol. 5, pp. 243–245, § 2084, and such cases as United States v. Haley, 452 F.2d 398 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253, and United States v. Smith, 441 F.2d 539 (9th Cir. 1971). Our examination of the statements made by the prosecuting attorney in his closing argument leads us to conclude that no reversible error was committed. The statements complained of are not as strong as counsel suggests. However, we caution prosecuting attorneys that in their closing argument they should not, in an effort to bolster the credibility of a Government witness, place their own integrity, directly or indirectly, on the scales. Such is improper, and in the proper case may well result in a reversal which could have been easily avoided.

Though the trial court erred in refusing to require the Government to identify its informer, it does not necessarily follow that Martinez is entitled to a new trial. Under the provisions of 28 U.S.C. § 2106 we choose to vacate the judgment and sentence and remand the case to the trial court for further proceedings consonant with the views herein expressed. Accordingly, the judgment and sentence is hereby vacated and the cause is remanded with directions that the trial court require the Government to identify its informer. Should the Government determine that it is more important to preserve the anonymity of its informant than to prosecute Martinez, then such anonymity may be preserved, and the case against Martinez should be dismissed. If, however, the Government identifies its informant, then such informant should be the subject of further proceedings before the trial court wherein the informer's knowledge of the facts and circumstances surrounding the alleged crime shall be fully developed by court and counsel. If it be determined that the informer's testimony would be favorable to Martinez, then the trial court shall grant Martinez a new trial. Otherwise, the trial court shall forthwith reinstate the judgment and sentence heretofore entered.

## ON PETITION FOR REHEARING

The Government in its petition for rehearing asks that the hearing on remand before the trial court wherein inquiry is to be made to determine whether the informant's version of what transpired in the home of Melvin Sedillo is favorable to Martinez, be, in the first instance, an *in camera* proceeding. We agree, and it is so ordered. With our original opinion being thus modified, the petition for rehearing is denied.