Jasen, J. (dissenting).
I dissent and vote to reverse and to reinstate the judgment of conviction on the ground that the trial court did not abuse its discretion in denying defendant’s request for disclosure of the informer’s identity.
At about 3:00 p.m., on March 18, 1970, .Luther Barnes, an undercover officer assigned to the Narcotics Division of the City of New York Police Department, entered a bar and grill located at Christopher and Belmont Streets, Brooklyn. Accompanying Barnes was a confidential police informer. The informer introduced Barnes to a man addressed as Abdul by saying, “Abdul, take care of my man. ’ ’ Abdul then motioned to Barnes to follow him outside the bar. There the two conversed for several minutes and Abdul gave Barnes seven glassine envelopes, later determined to contain heroin, in exchange for $15. The informer remained inside the bar and did not participate in the negotiations or witness the transaction. After the exchange was completed, Abdul and Barnes re-entered the bar. Barnes remained for several minutes more and then departed with the informer. He then rendezvoused with his backup team at a prearranged *174 location and placed the glassine containers in an evidence envelope and sealed it. Detective Lorenzo, a member of the backup team, who had been seated in a parked car on Christopher Street approximately 50-60 feet from the intersection of Belmont Street, observed Barnes enter the bar and grill with the informer, emerge and converse and shake hands with another man and then re-enter the bar. At trial, Barnes identified the defendant as the man Abdul who had sold him the heroin and Lorenzo identified the defendant as the man he had seen conversing and shaking hands with Barnes outside the bar.
This sequence was repeated on March 23, 1970. On that day at about 3:30 p.m., Barnes and the informer entered the same bar at Christopher and Belmont Streets. Abdul was- present and motioned to Barnes to go outside the bar with him. A brief conversation ensued, glassine envelopes, later determined to contain heroin, and money were exchanged. The informer remained in the bar. He did not participate in the negotiations and did not witness the transaction. There is no evidence that any words of introduction were spoken on Barnes’ behalf as on March 18. As on the previous occasion, from a car parked about 50 feet away on Christopher Street, Detective Lorenzo observed Barnes and another man, identified at trial as the defendant, conversing and shaking hands outside the bar.
On March 27, 1970, at about 6:00 p.m., Barnes entered the same bar and observed the defendant known to him as Abdul'. He remained for a few minutes and then reported to his backup team that the suspect was at the bar and furnished them a description. The backup team, Detective Lorenzo and another, then entered the bar and arrested the defendant. No drugs were found in his possession. Barnes then drove past the bar at about 15 miles per hour, observed the defendant in custody on the sidewalk outside the bar and signaled to the team that they had the right man.
At trial, the defendant denied having made sales of heroin on March 18 and March 23 or any other date. He testified that on each of these days he had been at home with his wife until 3:45 p.m. when he left for work. Defendant’s wife testified to the same effect. On cross-examination, however, it was determined that during 1970 she and the defendant had not been *175 living together continuously and that she could not recall exactly which days in March her husband had spent at home. The jury then returned a verdict of guilty of possession, possession with intent to sell, and sale of dangerous drugs incident to each of these two transactions (six counts).
On this record I am unable to conclude, as does the majority, that disclosure of the informer’s identity was required. In the interest of fairness, disclosure should be allowed where the informer is a material witness on the issue of guilt. (Roviaro v. United States, 353 U. S. 53, 60-61.) But there is and cannot be any fixed rule for resolving this issue in particular cases. In the final analysis, each case turns on its own peculiar circumstances. (P. 62.)
Here, unlike in the Roviaro case, the informer did not play a central role in the narcotics transactions. He merely brought Barnes and the defendant together on the first occasion. On neither occasion did he participate in the negotiations, nor was he even within hearing distance (see Gilmore v. United States, 256 F. 2d 565, 567) and he did not witness the most crucial step — the actual exchange of drugs—which occurred outside the bar. (See United States v. Paz-Sierra, 367 F. 2d 930, 931; United States v. Russ, 362 F. 2d 843, 845.)
Then, too, while Barnes and, to a lesser extent, Lorenzo were vigorously cross-examined as to the accuracy of their identification of the defendant, it was never explained why disclosure of the informer’s identity was warranted, which was defendant’s burden to do.* (See, generally, Ann., Accused’s Rights — Informer — Identity, 76 ALR 2d 262, § 13, subd. [b] and cases collected therein.) In evaluating the trial court’s exercise of discretion not to order disclosure, this is of some importance. (See United States v. Kelly, 449 F. 2d 329, 330.)
Also, the identification testimony was, in the main, quite sufficient. Barnes had two face-to-face encounters with the defendant. He observed him in the bar on the evening of the arrest and furnished a description to his backup team, one of whom (Lorenzo) had independently observed the defendant on *176 the two prior occasions. Barnes also identified the defendant as he slowly cruised by the arrest scene. His in-court identification was positive and Lorenzo testified unequivocally that the man he arrested was the man whom he had observed conversing and shaking hands with Barnes on the dates and at the times that the drug transactions had occurred.
In balancing the public interest in protecting the flow of information against the individual’s right to a fair trial, something more should be required before the privilege of nondisclosure gives way. Particularly in drug cases, informers play a crucial role and the privilege should yield only for the most cogent reasons. Indeed, it has been estimated that 95% of all Federal narcotics cases are obtained as the result of the work of informers. (Williams, The Defense of Entrapment and Belated Problems in Criminal Prosecutions, 28 Fordham L. Rev. 399, 403.) It is common knowledge that “ victims ” in narcotics cases rarely complain. Hence, in enforcing the narcotics laws, the State usually acts as policeman, prosecutor and complaining witness and of necessity must rely on informers, frequently drug users or sellers themselves, to lead its agents to .others involved in the chain of illicit drug, traffic. Of particular concern here is that the court holds disclosure is required where the informer merely brought the undercover agent and the drug seller together on one occasion. The informer did not participate in the actual negotiations, nor did he witness the transactions. He was a mere catalyst, so to speak. Is disclosure to be required in every such case? If so, sources of valuable information will surely dry up and the ability of those in law enforcement to deal effectively with the drug problem and to penetrate the cadres of organized drug syndicates will be severely and irreparably impaired.
On this analysis, I do not reach the procedural issue with regard to a disclosure hearing. Were the issue reached, like the majority, I would hold that whether the informer’s identity should be disclosed is a matter best resolved in the context of a full adversarial hearing.
For the reasons stated, the order of the Appellate Division should be reversed and the judgment of conviction reinstated.
In People v. Goggins: Order affirmed.
*177 Chief Judge Breitel and Judges Jones, Stevens and Rabin concur with Judge Wachtler ; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Gabrielli concurs.
In People v. Brown: Order affirmed.
Chief Judge Breitel and Judges Jones, Stevens and Rabin concur with Judge Wachtler; Judges Jasen and Gabrielli concur in result only.

 The existence of the informer was brought out only on cross-examination of Barnes. In presenting their ease, the People did not rely in any manner on information supplied by the informer.