[Crim. No. 3261.   Fourth Dist., Div. One.   Feb. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. BARTON J. VAN SYOC, Defendant and Appellant.

Daubney, Banche & Patterson and John E. Patterson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (Gerald). P. J.—Barton J. Van Syoc, convicted after court trial of possessing marijuana (Health & Saf. Code, § 11530), appeals from a probation order deemed a final judgment. The matter was submitted on the preliminary transcript and physical evidence.

The evidence and the reasonable inferences it raises will be stated most favorably in support of the judgment.

On August 25, 1967, at about 11 p.m. Deputy Sheriffs West and Zucker saw Van Syoc's car in a parking lot at Moonlight State Beach in Encinitas. Nineteen-year-old Van Syoc and two juvenile companions were approaching the car. Summer curfew was 11 o'clock p.m. and, strange as it may seem from the name, Moonlight State Beach was posted for daytime use only. The officers approached the young men because two of them appeared to be juveniles and the officers were undecided whether the third was a juvenile. Upon approaching the young men, the officers questioned them about their ages and places of residence.

Van Syoc told the deputies he owned the car. He and his companions were from the Los Angeles area. They had come to the beach in the car. Out of the blue, with nothing to suggest or prompt it, Deputy West asked if Van Syoc had any narcotics in the car; Van Syoc replied "No"; Deputy West asked if he could search the car for narcotics and Van Syoc said "Sure, go ahead." Deputy West opened the door on the car's passenger side and found four marijuana cigarettes mixed with tobacco cigarettes in a Pall Mall cigarette pack on the dashboard. The district attorney tacitly conceded at trial, and the Attorney General expressly concedes in his brief, the Pall Mall package was on the dashboard's right-hand side. Deputy West arrested the three young men and advised them of their constitutional rights. The other deputy then made a thorough search of the car incident to arrest and found two loose marijuana cigarettes, also on the right-hand side of the dashboard, which apparently West had not seen. There was no evidence of marijuana debris in the car or on the person of any of the three young men.

The facts we have recited are those relied upon by the parties in their briefs. In addition there was obscure hearsay testimony of Zig-Zag cigarette papers found when the three

young men were taken to the sheriff's Encinitas office. No evidence indicates where the Zig-Zag papers were found and no attempt was made to connect them with Van Syoc, his car or his companions.

The trial court denied Van Syoc's motion to suppress the marijuana evidence under Penal Code, section 1538.5, made on the ground the search was illegal. The court's finding he had freely and voluntarily consented to the search is supported by the evidence (*People* v. *Cirilli,* 265 Cal.App.2d 607, 611-612 [71 Cal.Rptr. 604]).

█ Van Syoc contends the judgment is unsupported by substantial evidence he knew the marijuana was in his car. █ This is a necessary element of criminal marijuana possession. (*People* v. *Redrick,* 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) █ There was no evidence Van Syoc had any previous contact with marijuana; nothing about his appearance suggested he was a user or possessor of marijuana; he did not use jargon associated with narcotics users; no marijuana debris was found on his person; there was no evidence he was, or appeared to be, under the influence of narcotics; he made no evasive or equivocal statements; and, while Deputy West concluded the three young men acted furtively, he immediately explained that testimony by agreeing they "just seemed nervous" to him, "probably due to the fact that we were police officers in uniform." Deputy West candidly admitted he had no idea there was any contraband in the car when he asked permission to search it. The only statements made by Van Syoc related to his identification, ownership of the car, denial narcotics were in the car and permission to search.

The record does not inform us how long Van Syoc's car had been parked in the lot, how long the three companions had been away from the car, whether other cars and other people were in the area or whether the car windows were open or shut. The record does not state who had driven the car and who had been seated on the front passenger side where the marijuana was found. The circumstances of Deputy West's search indicate the car was unlocked. The evidence does not show Van Syoc was present at any time when the marijuana was on the dashboard. There was no showing whether all three companions stayed in each other's company, were separated, or whether one or both of the juveniles might have been in the car when Van Syoc was absent. Evidence on this subject might circumstantially raise some inference of joint posses-

sion or knowledge of what was in plain sight on the car's dashboard. Whatever inference might be drawn from the record's silence in this regard would rest on sheer speculation. Speculation cannot substantially support an incriminating inference.

Unless it can be said finding marijuana cigarettes secreted in an ordinary cigarette package in Van Syoc's car standing alone raises an inference Van Syoc harbored guilty knowledge of the marijuana's presence, the judgment convicting him must be reversed. Mere presence at the scene of a crime is not sufficient to justify a finding of guilt. (*People* v. *Roberts*, 228 Cal.App.2d 722, 727 [39 Cal.Rptr. 843].)

At trial the People had the burden of proving Van Syoc guilty beyond a reasonable doubt. Van Syoc was not required to prove his innocence. Here the parties had agreed in advance of trial the case would be submitted on the preliminary transcript and physical evidence introduced at the preliminary hearing. There were no surprises. The People knew full well the adequacy, or in this case the inadequacy of that record; they knew Van Syoc did not expect to introduce any evidence at trial; and they knew they could not look to Van Syoc, and Van Syoc was not required, to fill the vacuum created by their failure to establish each element of marijuana possession. Van Syoc's inaction in presenting a case supporting his innocence does not give substance to evidence relied upon by the People to prove his guilt which otherwise would have no substance.

In no case cited to us has mere ownership of an unlocked car parked in a public area in which marijuana is found and to which the owner has non-exclusive access been held sufficient to establish the owner possessed the found narcotic with knowledge of its presence. Since there was no independent evidence, either circumstantial or direct, raising any inference Van Syoc had the requisite knowledge, that element of marijuana possession is unsupported by substantial evidence.

Judgment reversed.

Coughlin, J., concurred.

WHELAN, J.—I dissent.

The evidence is not insufficient as a matter of law to support the finding of guilt.

Where a case rests largely upon circumstantial evidence, the circumstances relied upon to establish the guilt of one

accused of crime must be consistent with that hypothesis and inconsistent with any other rational conclusion. In other words, where the incriminatory circumstances relied upon are equally compatible with innocence, a reviewing court will reverse a judgment of conviction, and a like application of the judgment.

. . The rule so stated is defined in *People* v. *Perkins*, 8 Cal.2d .502, 518-519 [66 P.2d 631], where the court goes on to say that the rule: ". . . does no more than to instruct the jury that if a reasonable doubt is created in their minds for any reason they must acquit the defendant. But where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, this court is bound by the finding of the jury.''

· In *People* v. *Kerr*, 37 Cal.2d 11, 15 [229 P.2d 777], the court said: ''The rule as to circumstantial evidence and the requirement as to burden of proof are for application in, and primarily are the concern of, the trial court; an appellate court will not alter or hold unsupported the trial court's findings merely because it might reasonably draw an inference different from one the trial court reasonably drew, or might not be convinced beyond a reasonable doubt that it would have made the same findings.''

· In the case at bench, responsibility for the presence of marijuana in defendant's car was upon defendant, or one or both of his companions, or all three of them, or it was upon some unknown, hypothetical person.

Since the earlier presence in the car of defendant and his companions is unquestioned, it is more reasonable to infer that one of those had placed the marijuana there than that a stranger had entered the car and laid out the cigarettes on the dashboard.

Indeed, no reason suggests itself why some unknown person should have planted the contraband in defendant's car.

It is always proper to show that some other person, and not the defendant, committed the crime with which the latter is charged. (*People* v. *Erno*, 195 Cal. 272, 279 [232 P. 710].)

Such showing is usually made by the production in the trial court of some evidence to give rise to a reasonable doubt that the defendant on trial committed the crime.[1]

---

[1] The subject of evidence to show that someone other than the defendant committed the crime is discussed in 1 Wigmore (3d ed.), sections 139-141, pages 573-579.

In *People* v. *Bledsoe,* 75 Cal.App.2d 862, 864 [171 P.2d 950], the doubt was compelled by defendant's testimony denying ownership of the marijuana concealed in his car and by undisputed evidence that the car had been stolen the night before and used by another in the perpetration of a robbery in another city, that the defendant had not used it since it had been returned, and that others beside the defendant had occupied the car at the time of and immediately following the arrest.

In *People* v. *Gory,* 28 Cal.2d 450, 457 [170 P.2d 433], an unlocked box used by the defendant in which marijuana was found was in a room shared with 30-odd persons and from which the defendant was absent during the daytime. In view of defendant's testimony denying knowledge of the presence of the marijuana, the court said: ''Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of the marijuana.''

There was in *People* v. *Gory* no suggestion that as a matter of law the evidence was insufficient to support the verdict.

It was within the present defendant's power to produce evidence as to the length of time he had been out of his car before his encounter with the deputy sheriffs; and whether his car had been out of his sight at any time; such evidence could have been unavailable to the prosecution.

All such evidence was lacking.

The hypothesis that some unknown person during defendant's absence from his car placed the package containing four marijuana cigarettes and two unpackaged cigarettes on the dashboard of the car is unlikely enough on the face of it, and far less reasonable than the inference that the cigarettes were placed in the car by someone that had a right to enter it. In the absence of all evidence to indicate that any such stranger entered or had the opportunity to enter the car, or even was present in the vicinity, the hypothesis is not made tenable by the lack of positive evidence to show there was no one else in the vicinity.[2]

The possibility that some person other than the defendant on trial may have committed a crime of which the corpus

[2] When asked what the deputies saw on the parking lot, West said, ''We observed a vehicle parked there.''

delicti has been established is merely a matter of argument in the absence of any evidence that points to some other person as the perpetrator.

If, as I think, it was reasonable to infer that defendant or his companions had placed the contraband in the car, there remains only the question whether defendant, either himself, or jointly with his companions, was chargeable with its presence.

The physical evidence consists of an opened package of Pall Mall cigarettes, white in color, cylindrical in shape, with open ends; five yellow hand-rolled cigarettes, and one white hand-rolled cigarette, each of which has both ends closed and drawn to a point; and a package of Zig-Zag cigarette papers.

The ends of the four yellow hand-rolled cigarettes stuck out from the opened end of the package as it was seen in plain view on the dashboard.

One of the two unpackaged hand-rolled cigarettes found on the right-hand side of the dashboard was rolled with yellow wheat straw paper, one with white paper.

Knowledge of the narcotic nature may be inferred from the manner in which contraband is secreted or attempted to be secreted, in an ordinary package of cigarettes. (*People v. Powell*, 236 Cal.App.2d 881 [46 Cal.Rptr. 415].)

The cigarettes were so placed that it might be inferred the two unpackaged cigarettes had been placed for use by two persons; and that a third person could take one from the package.

It is unlikely that the cigarettes could have been placed there or could have been there during defendant's presence without his having been aware of them.

Defendant and Gonzales, one of the 16-year-old boys, were from Canoga Park, and the other boy from Reseda. It may be judicially noticed that Canoga Park is near the northwesterly limit of the Los Angeles metropolitan area, Reseda a separate community some four miles easterly.

It may reasonably be inferred if Faust and Gonzales had each brought some of the marijuana cigarettes into the car and severally laid them out on the dashboard that, if not prearranged, so unlikely a coincidence would have been the subject of conversation between them.

The same would be true if only one of them had produced the cigarettes.

It might also be inferred that Faust and Gonzales would

not have laid out marijuana cigarettes for their own use in the car of the 19-year-old defendant without his having been aware of it.

It would not be reasonable to say that if defendant knowingly permitted contraband to be in his vehicle, he could not be held culpable solely because his was not the hand that put it there. Thus, it would be reasonable to infer that the 19-year-old defendant, the owner of the car, had joint possession with his 16-year-old companions or aided and abetted them.

It is not necessary for that purpose to infer that the Zig-Zag cigarette papers, although received in evidence against defendant without objection, were found on his person rather than on that of a companion; or to infer that the cigarettes were not on the right-hand side of the dashboard.[3]

It is, of course, possible that Faust or Gonzales or both jointly, rather than defendant, placed the cigarettes on the dashboard; it is even possible that they did so after defendant alighted from the car, and unobserved by him. However, there is nothing in the evidence to suggest that either of them had been in the car at any time when defendant was absent; all were together when first seen by the deputy.

Here again, it was possible for defendant to have produced the evidence in support of that hypothesis. The entire absence of evidence on the subject does not compel an inference that might have been founded on such evidence had it been produced. This is not to draw any inference from the fact defendant did not testify.

The following circumstances are not without significance:

Two 16-year-old youths from different communities in the Los Angeles area ''had been transported'' to the San Diego area in defendant's car; defendant was one of the party of

---

[3]West's testimony concerning the Zig-Zag cigarette papers received in evidence by stipulation and mentioned in defendant's brief was: ''. . . the package of Zig Zags was found by our patrol sergeant at the time . . . when we had taken our subjects to our Encinitas office awaiting transportation.'' Nothing in the record indicates West was not an eyewitness to the finding of the Zig-Zag papers.

The Attorney General in his brief has accepted the statement made in defendant's opening brief that the package containing the four marijuana cigarettes was found on the right-hand side of the dashboard. However, the only mention of that in the record was in argument when defense counsel stated: ''I believe the cigarettes were found on the right-hand side of the dashboard,'' to which the court rejoined ''On the dashboard I believe it is.''

Defense counsel earlier had made the same misstatement in arguing a motion under section 1118 of the Penal Code. No doubt it was his interpretation of the testimony.

three making the trip. At 11 o'clock at night they were in an unincorporated beach area in San Diego County that was otherwise deserted, so far as has been shown, and which was posted as being for day use only.

The significance of those matters is not limited to their bearing on the question of knowing possession of the drug. They make it reasonable also that the sheriff's deputy, having made the original determination as to the ages and places of residence of the three persons, should have made further inquiry in view of the lateness of the hour, the seclusion of the area, and the distance the three were from home.

The evidence presents a different factual situation from that of *People* v. *Moore,* 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800]. In *People* v. *Moore, supra,* further, the defendant was denied by a ruling of the trial court the opportunity of testifying regarding the voluntariness of his consent.

It is not the burden of the prosecution to produce evidence that would exclude the very possibility that some person other than the defendant on trial committed the offense.

It is said in *People* v. *Nunn,* 65 Cal.App.2d 188, 195 [150 P.2d 476] : "When reliance is placed upon circumstantial evidence only it is not essential that the inculpatory facts be absolutely incompatible with innocence in order to justify the inference of guilt. It is sufficient if the jurors are convinced by the evidence of its guilt to a moral certainty and beyond a reasonable doubt."

Circumstantial evidence need not, in order to justify the inference of legal guilt, consist of inculpatory facts which are absolutely and to the point of demonstration incompatible with innocence. A conviction in the minds of the jurors to a moral certainty and beyond a reasonable doubt arising from the evidence of defendant's guilt is sufficient. (*People* v. *Borrego,* 211 Cal. 759, 765 [297 P. 17].)

I would affirm.

A petition for a rehearing was denied February 18, 1969, and respondent's petition for a hearing by the Supreme Court was denied April 2, 1969. Burke, J., was of the opinion that the petition should be granted.