**STATE of Missouri, Respondent,**

v.

**Bernard D. BONEY, Appellant.**

**No. WD 38640.**

Missouri Court of Appeals,
Western District.

May 26, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 30, 1987.

Application for Transfer Sustained
Sept. 15, 1987.

Case Retransferred Jan. 25, 1988.

Court of Appeals Opinion
Readopted Feb. 1, 1988.

James W. Fletcher, Jeans, Bellmann &
Fletcher, Kansas City, for appellant.

William L. Webster, Atty. Gen., John M.
Morris, Asst. Atty. Gen., Jefferson City,
Philip M. Koppe, Asst. Atty. Gen., Kansas
City, for respondent.

Before LOWENSTEIN, P.J., and
PRITCHARD and TURNAGE, JJ.

TURNAGE, Judge.

Bernard D. Boney was found guilty of
possession of more than 35 grams of mari-
juana in violation of § 195.020, RSMo 1986,
after a bench trial. Sentence was 90 days
in the county jail.

The only question presented is the suffi-
ciency of the evidence. Reversed.

In November of 1985 Deputy Sheriff
Charles Litton of Buchanan County saw a
car parked on a rural road next to an open
field. He observed a man standing by the
open driver's door. Litton was on New
Highway 59 when he observed the car, and,
because it resembled a car which had been
subject of a complaint, he decided to inves-
tigate. By the time Litton had turned
around and approached the car, the man
who had been standing next to it was out in
the field.

Litton observed the man in the field,
later identified as Boney, with a corn knife

in his hand. The record is unclear as to exactly how far Boney was from Litton, but Litton hid in some bushes and observed Boney's actions. In the meantime Litton had called for a backup, because he did not want to approach Boney while he had the corn knife. While Litton observed from some distance, Boney used the corn knife to cut down a stalk of what Litton believed to be growing marijuana. The stalk was five to six feet in height. Though Litton stated that Boney cut the stalk down, there was no evidence that Boney ever held the stalk in his hand or had any other contact with it.

After he cut down the stalk, Litton said Boney started walking around the field as if looking for something. While Boney was walking around, Sgt. Higdon arrived to assist Litton. Litton and Higdon approached Boney in the field, but when Boney became aware of the officers, he began to run. Sgt. Higdon succeeded in catching Boney about a mile away.

While patting Boney down, one of the officers felt what he thought to be car keys in Boney's pocket, but he did not remove the item from Boney's pocket. The officers put Boney in a vehicle and took him to the sheriff's office. When Boney was further searched, the officers did not find any car keys.

The vehicle that Boney had been near was towed to a garage and searched. Police found nothing in the passenger compartment. They forced open the locked trunk and found 23 grams of marijuana. The next day Litton returned to the field. He said he went to the spot where Boney had cut down the stalk and there he found a freshly cut stalk lying on the ground and a corn knife about fifteen to twenty yards away. A chemical analysis of the stalk revealed it to be marijuana with a weight of over 100 grams. On cross-examination Litton stated that he was not positive that the stalk he found on the ground was the same stalk that he had observed Boney cut down.

The automobile Boney had been standing near did not belong to Boney. The owner was not identified at trial. There was no evidence that Boney had been driving the automobile or had any other possession of it.

■ Boney contends the evidence was insufficient to prove that he had possession of more than 35 grams of marijuana. Boney's contention is resolved by determining whether or not Boney was shown to have possession of the stalk he cut down.

In *State v. Tygart*, 531 S.W.2d 47, 51[3] (Mo.App.1975), this court stated the test for finding "possession" of a controlled substance:

The sufficiency of the proof necessary to sustain a conviction for actual or constructive possession of a proscribed controlled substance is tested by whether " 'the defendant was aware of the presence *and character of the particular substance, and was intentionally and consciously in possession of it.*' " (Emphasis added.) *State v. Young*, 427 S.W. 2d 510, 513 (Mo.1968); and *State v. Burns*, 457 S.W.2d 721, 725 (Mo.1970).

This court concludes that the evidence was not sufficient to satisfy the *Tygart* test. The evidence was that Boney took a corn knife and cut down a stalk of marijuana (this gives the state the benefit of every possible inference that the stalk Litton recovered the next day was the same stalk Boney cut down). There was no evidence that Boney held the stalk in his hand after he had cut it. Nor is there evidence that he had any possession whatever of the stalk. In fact, the evidence disproves the idea that Boney was intentionally in possession of the stalk, since he left it lying on the ground and continued walking through the field.

It is possible that Boney intended to return later to pick up the stalk, but this theory would be pure speculation without any support in the evidence.

■ The state argues that Boney exercised dominion over the stalk when he severed it from the ground. As stated in *Tygart* the test is not dominion, but an intentional and conscious possession of marijuana.

The state further argues that Boney fled when the officers approached and this fact was admissible to show a consciousness of guilt. *State v. Rodden*, 713 S.W.2d 279, 290[1] (Mo.App.1986). While it is true that evidence of flight is admissible, flight is one circumstance to be considered in connection with the other evidence in the case. Flight in and of itself is insufficient to support a conviction. *State v. Castaldi*, 386 S.W.2d 392, 395[4, 5] (Mo.1965). Thus, Boney's flight does not constitute sufficient evidence of possession to support the conviction.

The state further argues that an inference may be drawn from the facts that Boney had control of the car he was near before he went into the field. There is no evidence to indicate that Boney had possession of the car and certainly no evidence to show that Boney had access to the trunk or that he knew of the marijuana which was found there. In *State v. West*, 559 S.W.2d 282, 285 (Mo.App.1977), the court refused to find that one who had owned an automobile for about three weeks was therefore "in possession" of PCP that was found in the trunk of her car. The court relied on the fact that the keys to the car had been left in a mobile home that was occupied by several people. The court stated there was no evidence that the owner had exclusive control of the automobile, and in fact the evidence showed that others had access to it. The court observed the state failed to show that the keys to the automobile were in the owner's custody before the search. Further, there was no evidence that the owner had ever entered the trunk of the car or had touched the box containing PCP. For those reasons the court held the evidence was insufficient to find the owner was "in possession" of PCP found in the trunk.

Except for the fact that Boney was not shown to be the owner of the automobile in this case, all of the reasons given in *West* as to why the possessor of the car was not in possession of the drugs inside apply here. Of course, the fact that Boney did not own the car makes this case even stronger than *West*. In any event there was no evidence to show that Boney had exclusive possession of the automobile, much less that he knew of the marijuana in the trunk.

The judgment is reversed and Bernard D. Boney is ordered discharged.

All concur.